**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division**

|  |  |
|---|---|
| ALYSSA REID,<br><br>           Plaintiff,<br><br>     v.<br><br>JAMES MADISON UNIVERSITY, *et al.*,<br><br>           Defendants. | Case No. 5:21-cv-00032-EKD |

**DEPARTMENT OF EDUCATION AND SECRETARY CARDONA'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ........................................................................................... 1

BACKGROUND .............................................................................................. 2

I.      Statutory And Regulatory Background ...................................... 2

II.     Plaintiff's Allegations .................................................................. 4

LEGAL STANDARD ...................................................................................... 5

ARGUMENT ................................................................................................... 6

I.      The Court Lacks Subject Matter Jurisdiction Because Plaintiff Lacks
        Standing To Challenge Withdrawn Guidance Or Prohibit ED From
        Taking Unspecified Future Action. ............................................... 6

        A.      Plaintiff Lacks Standing To Challenge The 2011 DCL And 2014 Q&A,
                Which Were Withdrawn Before Plaintiff Was Accused Of Misconduct
                And Are Not In Effect Today. ........................................ 7

                1.      The 2011 DCL And 2014 Q&A Were Withdrawn Before
                        Plaintiff's Title IX Proceeding, And Could Not Have Caused
                        Any Injury That Plaintiff Suffered. ........................ 7

                2.      The 2011 DCL And 2014 Q&A Are Not In Effect Now, And An
                        Order Against ED Could Not Redress Any Injury That Plaintiff
                        Suffered. ........................................................ 10

        B.      Plaintiff Lacks Standing To Seek An Order Precluding ED From
                Issuing Guidance Or Rules In The Future. ...................... 12

II.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's APA
        Claims Because She Does Not Challenge Final Agency Action For Which
        She Lacks An Adequate Alternative Remedy. ............................ 14

        A.      Neither The 2011 DCL Nor The 2014 Q&A Was Final Agency
                Action. ............................................................................ 15

        B.      Plaintiff Has An Adequate Alternative Remedy. .............. 16

III.    Plaintiff's APA Claims Are Time Barred. ................................. 17

CONCLUSION ............................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*6th Cong. Dist. Republican Comm. v. Alcorn*,
    913 F.3d 393 (4th Cir. 2019) ..................................................................... 6

*Abbott v. Pastides*,
    900 F.3d 160 (4th Cir. 2018) ................................................................... 13

*Abbott v. Perez*,
    138 S. Ct. 2305 (2018) ............................................................................ 14

*Aetna Life Ins. Co v. Haworth*,
    300 U.S. 227 (1937) ................................................................................ 12

*Almy v. Sebelius*,
    679 F.3d 297 (4th Cir. 2012) ................................................................... 14

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
    271 F.3d 262 (D.C. Cir. 2001) ................................................................ 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................. 5

*Bennett v. Spear*,
    520 U.S. 154 (1997) ................................................................................ 15

*California v. Texas*,
    --- S. Ct. ----, 2021 WL 2459255 (U.S. June 17, 2021) ................................. 6-7, 12

*Chafin v. Chafin*,
    568 U.S. 165 (2013) ................................................................................ 10

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................... 7, 12, 13

*Deal v. Mercer Cnty. Bd. of Educ.*,
    911 F.3d 183 (4th Cir. 2018) ................................................................... 11

*Doe v. Obama*,
    631 F.3d 157 (4th Cir. 2011) ..................................................................... 8

*Dunn–McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*,
    112 F.3d 1283 (5th Cir. 1997) ................................................................. 18

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*,
    396 F.3d 1265 (D.C. Cir. 2005) ............................................................... 16

*Equity in Athletics, Inc. v. Department of Education*,
    639 F.3d 91 (4th Cir. 2011) ...................................................................... 8

*Exela Pharma Scis., LLC v. Kappos*,
    No. 12-469, 2012 WL 6697068 (E.D. Va. Dec. 2012) ......................................... 18

*Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S. EPA*,
    313 F.3d 852 (4th Cir. 2002) ................................................................... 16

*Frank Krasner Enters., Ltd. v. Montgomery Cnty.*,
    401 F.3d 230 (4th Cir. 2005) .................................................................... 8

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .............................................................................. 11

*Garcia v. Vilsack*,
    563 F.3d 519 (D.C. Cir. 2009) .................................................................. 16

*Golden & Zimmerman, LLC v. Domenech*,
    599 F.3d 426 (4th Cir. 2010) .......................................................... 2, 15, 16

*Goodman v. Praxair, Inc.*,
    494 F.3d 458 (4th Cir. 2007) ................................................................... 19

*Gulf Oil Corp. v. Brock*,
    778 F.2d 834 (D.C. Cir. 1985) .................................................................. 11

*Hire Order Ltd. v. Marianos*,
    698 F.3d 168 (4th Cir. 2012) ......................................................... 2, 17, 18

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
    892 F.3d 613 (4th Cir. 2018) .................................................................... 5

*Invention Submission Corp. v. Rogan*,
    357 F.3d 452 (4th Cir. 2004) ................................................................... 16

*Lansdowne on the Potomac Homeowners Ass'n. v. OpenBand at Lansdowne, LLC*,
    713 F.3d 187 (4th Cir. 2013) .................................................................... 8

*LaRoque v. Holder*,
    679 F.3d 905 (D.C. Cir. 2012) ............................................................. 10-11

*Long Term Care Partners, LLC v. United States*,
    516 F.3d 225 (4th Cir. 2008) .................................................................... 6

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ........................................................................ 5, 6, 8, 10

*McBurney v. Cuccinelli,*
   616 F.3d 393 (4th Cir. 2010) .............................................................. 12

*Md. Shall Issue, Inc. v. Hogan,*
   963 F.3d 356 (4th Cir. 2020) .............................................................. 10

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ........................................................................... 12

*Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.,*
   990 F.3d 834 (4th Cir. 2021) .............................................................. 15

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,*
   366 F.3d 930 (D.C. Cir. 2004) ........................................................... 17

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,*
   383 F.3d 1047 (D.C. Cir. 2004) ......................................................... 17

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) ........................................................................... 13

*Odyssey Logistics & Tech. Corp. v. Iancu,*
   959 F.3d 1104 (Fed. Cir. 2020) ......................................................... 18

*Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.,*
   983 F.3d 671 (4th Cir. 2020) .............................................................. 18

*Pashby v. Delia,*
   709 F.3d 307 (4th Cir. 2013) .............................................................. 14

*Peri & Sons Farms, Inc. v. Acosta,*
   374 F. Supp. 3d 63 (D.D.C. 2019) ..................................................... 18

*Raines v. Byrd,*
   521 U.S. 811 (1997) ............................................................................. 6

*Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.,*
   489 F.3d 1267 (D.C. Cir. 2007) ........................................................... 6

*Renne v. Geary,*
   501 U.S. 312 (1991) ............................................................................. 5

*Schmidt v. Lessard,*
   414 U.S. 473 (1974) ........................................................................... 14

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ................................................................................. 6

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) .......................................................................... 6

*TransUnion LLC v. Ramirez*,
  --- S. Ct. ----, 2021 WL 2599472 (U.S. June 25, 2021) ........................ 6

*United States v. Minor*,
  228 F.3d 352 (4th Cir. 2000) ................................................................ 19

*Vengalattore v. Cornell Univ.*,
  No. 18-1124, 2020 WL 2104706 (N.D.N.Y. May 1, 2020) ................ 10, 11

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*,
  714 F.3d 186 (4th Cir. 2013) ................................................................ 15

*White v. Nat'l Union Fire Ins. Co.*,
  913 F.2d 165 (4th Cir. 1990) ................................................................ 12

*Wild Virginia v. Council on Envt'l Quality*,
  --- F. Supp. 3d ----, 2021 WL 2521561 (W.D. Va. June 21, 2021) ........ 13

*Women's Equity Action League v. Cavazos*,
  906 F.2d 742 (D.C. Cir. 1990) .............................................................. 17

## STATUTES

5 U.S.C. § 553 ................................................................................................ 2

5 U.S.C. § 704 ............................................................................................ 2, 14

5 U.S.C. § 706 .............................................................................................. 10

20 U.S.C. § 1681 ............................................................................................ 2

28 U.S.C. § 2201 ..................................................................................... 12, 14

28 U.S.C. § 2401 .......................................................................................... 17

## ADMINISTRATIVE MATERIALS

Executive Order on Guaranteeing an Educational Environment Free from Discrimination
  on the Basis of Sex, Including Sexual Orientation or Gender Identity,
  86 Fed. Reg. 13803 (Mar. 8, 2021) .......................................................... 3

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving
    Federal Financial Assistance,
    85 Fed. Reg. 30026 (May 19, 2020) ........................................................................ 3

U.S. Dep't of Educ., Department of Education's Office for Civil Rights Launches
    Comprehensive Review of Title IX Regulations to Fulfill President Biden's Executive Order
    Guaranteeing an Educational Environment Free from Sex Discrimination (Apr. 6, 2021),
    https://go.usa.gov/x6BKZ ........................................................................................ 3

U.S. Dep't of Educ., Letter from Candice Jackson (Sept. 22, 2017),
    https://go.usa.gov/x6BK8 ........................................................................................ 3

U.S. Dep't of Educ., Letter from Russlynn Ali (Apr. 4, 2011),
    https://go.usa.gov/x6BKU .................................................................................. 3, 15

U.S. Dep't of Educ., Q&A on Campus Sexual Misconduct (Sept. 22, 2017),
    https://go.usa.gov/x6NxR ........................................................................................ 3

U.S. Dep't of Educ., Questions and Answers on Title IX and Sexual Violence (Apr. 29, 2014),
    https://go.usa.gov/x6BKE ................................................................................ 3, 5, 15

U.S. Dep't of Educ., Rescinded Policy Guidance,
    https://go.usa.gov/x6Qh3 ........................................................................................ 3

**OTHER AUTHORITIES**

Erwin Chemerinsky, Federal Jurisdiction (8th ed. 2021) ............................................ 13

## INTRODUCTION

Plaintiff Alyssa Reid alleges that after a complaint of sexual misconduct was filed against her, James Madison University ("JMU") took "deliberate" actions that were "designed to and did" deprive her of a fair hearing.  Compl. ¶¶ 461, 582, ECF No. 1.  Neither the Department of Education nor its Secretary (together, "ED") was involved in any of those events, and the Court should grant ED's motion to dismiss.

Plaintiff's theory appears to be that when JMU adjudicated the allegations of sexual misconduct against her in 2019, the JMU policies then in effect had been designed to reflect guidance that ED had issued in 2011 and 2014 to describe its interpretation of the requirements imposed by Title IX of the Education Amendments of 1972 ("Title IX").  As relief against ED, she seeks an order setting aside those guidance documents and an order precluding ED from issuing similar guidance in the future.

Plaintiff's complaint suffers from an array of jurisdictional and other threshold problems.  At the outset, ED withdrew the 2011 and 2014 guidance documents in 2017—over a year before the Title IX complaint at issue was filed with JMU.  The 2011 and 2014 guidance documents therefore could not have caused any injury that Plaintiff suffered long after their rescission.  Moreover, because those guidance documents were rescinded nearly four years before this lawsuit was filed, there would be no relief for this Court to award against ED even if Plaintiff prevailed on her claims, which means that her alleged injuries are not redressable by an order from this Court.  For either reason, she lacks Article III standing to challenge the 2011 and 2014 guidance, and the Court lacks jurisdiction over those claims.  Plaintiff's request for an order precluding ED from issuing new guidance is equally unavailing, for Plaintiff provides no plausible allegation that she is likely to be subject to a Title IX proceeding in the future or in any event that ED is preparing to do anything unlawful.

Even if Plaintiff had standing, her claims would still fail for lack of jurisdiction.   The Administrative Procedure Act ("APA") permits a plaintiff to seek judicial review of "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, but Fourth Circuit precedent is clear that non-binding guidance documents are not final agency action under the statute.  *See Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 432-33 (4th Cir. 2010).  And as this lawsuit amply demonstrates, Plaintiff has an adequate alternative remedy in the form of a lawsuit against JMU.  For both reasons, Plaintiff may not proceed under the APA.

Finally, even if Plaintiff could overcome all of those jurisdictional hurdles, her claims would be time barred.  Her facial challenges to ED's guidance documents are subject to a six-year statute of limitations, and under unambiguous Fourth Circuit precedent, the clock started ticking when the guidance documents were issued in 2011 and 2014, respectively.  *See Hire Order Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012).  Those guidance documents may not be challenged in a lawsuit filed in 2021.

The Court should therefore grant ED's motion to dismiss.

## BACKGROUND

## I.     Statutory And Regulatory Background

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a). In the nearly four decades since Title IX was enacted, ED has addressed how the statute applies to sexual harassment and other sexual misconduct in both various guidance documents and a legislative rule promulgated through notice and comment pursuant to 5 U.S.C. § 553.  The most relevant documents for purposes of this litigation include the following:

- In 2011, ED's Office for Civil Rights ("OCR") issued a Dear Colleague Letter describing ED's understanding of the requirements imposed by Title IX. *See* U.S. Dep't of Educ., Letter from Russlynn Ali (Apr. 4, 2011) ("2011 DCL"), https://go.usa.gov/x6BKU. The letter stated that it "does not add requirements to applicable law, but provides information and examples to inform recipients about how OCR evaluates whether covered entities are complying with their legal obligations." *Id.* at 1 n.1.

- In 2014, OCR issued a Questions and Answers document on the same topic. *See* U.S. Dep't of Educ., Questions and Answers on Title IX and Sexual Violence (Apr. 29, 2014) ("2014 Q&A"), https://go.usa.gov/x6BKE. This document likewise stated that it "does not add requirements to applicable law, but provides information and examples to inform recipients about how OCR evaluates whether covered entities are complying with their legal obligations." *Id.* at 1 n.1.

- In 2017, OCR formally withdrew both the 2011 DCL and the 2014 Q&A. *See* U.S. Dep't of Educ., Letter from Candice Jackson (Sept. 22, 2017), https://go.usa.gov/x6BK8. OCR stated that it "will not rely on the withdrawn documents in its enforcement of Title IX." *Id.* at 2. Rather, OCR explained, "the Department's enforcement efforts proceed from Title IX itself and its implementing regulations." *Id.* (footnotes omitted). OCR simultaneously issued a new Question and Answer document to provide information about how OCR will assess a school's compliance with Title IX pending issuance of a legislative rule. *See* U.S. Dep't of Educ., Q&A on Campus Sexual Misconduct (Sept. 22, 2017) ("2017 Q&A"), https://go.usa.gov/x6NxR.

- In 2020, ED issued a legislative rule addressing schools' obligations under Title IX. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026 (May 19, 2020). OCR then withdrew the 2017 DCL and Q&A. *See* U.S. Dep't of Educ., Rescinded Policy Guidance, https://go.usa.gov/x6Qh3 (last visited July 2, 2021).

- In 2021, the President issued an executive order directing ED to review the 2020 Rule. *See* Executive Order on Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity, 86 Fed. Reg. 13803 (Mar. 8, 2021). ED subsequently announced that it "anticipates publishing a notice of proposed rulemaking" amending that rule. U.S. Dep't of Educ., Department of Education's Office for Civil Rights Launches Comprehensive Review of Title IX Regulations to Fulfill President Biden's Executive Order Guaranteeing an Educational Environment Free from Sex Discrimination (Apr. 6, 2021), https://go.usa.gov/x6BKZ.

## II.     Plaintiff's Allegations[1]

Plaintiff's complaint includes only a few salient allegations with respect to her claims against ED.  In 2015, when Plaintiff was a JMU employee, she began a romantic relationship with Kathryn Lese, a graduate student.  *See* Compl. ¶¶ 249-250, 252, 274.  On December 4, 2018, following the end of their relationship, Lese sent a Title IX statement to JMU's Title IX coordinator.  *See id.* ¶ 299.  JMU thereafter commenced a hearing on March 28, 2019, *id.* ¶ 372, which concluded with an April 1, 2019, determination that Plaintiff had violated JMU policy by engaging in a nonconsensual sexual relationship.  *Id.* ¶¶ 417-418.  On appeal, both the Dean and the Provost upheld the hearing panel's determination.  *Id.* ¶¶ 432-452.  The Provost issued her decision on June 19, 2019, and as a sanction, she placed a letter of reprimand in Plaintiff's personnel file.  *Id.* ¶¶ 439-452.

Plaintiff alleges that in finding her responsible for sexual misconduct, JMU repeatedly violated its own policies, acting out of bias against Plaintiff on the basis of her sex and sexual orientation.  *See, e.g.*, Compl. ¶¶ 367, 457, 491, 522, 586, 590, 647(h).  Plaintiff further alleges that even under JMU's post-2014 policies, a fair process would have exonerated her.  *See id.* ¶ 609.

Plaintiff's theory against ED appears to be that "ED improperly coerced colleges and universities to adopt fundamentally unfair campus disciplinary proceedings through the 2011 DCL and the 2014 Q&A."  Compl. ¶ 739; *accord id.* ¶ 683.  The main aspect of the 2011 DCL and 2014 Q&A about which Plaintiff complains is the indication that schools should apply the preponderance of the evidence standard for adjudicating allegations of sexual misconduct.  *See, e.g.*, Compl. ¶¶ 41-47, 54-58, 70, 655.[2]  Plaintiff expressly pleads, however, that JMU's standard

---

[1] ED has no knowledge of any the underlying facts, and the following summary is drawn exclusively from the complaint.

[2] Plaintiff also points to the 2014 Q&A's statement that OCR will apply a presumption that sexual relationships between students and faculty are nonconsensual.  *See* Compl. ¶¶ 667, 693,

of proof at the time of the 2011 DCL was already a "preponderance of probative, reliable and substantial evidence." *Id.* ¶ 69; *see also id.* ¶ 121.

Plaintiff asserts seven claims against ED:  six challenge the 2011 DCL and 2014 Q&A (Counts V-X) under the APA, and one challenges both the 2011 DCL and the 2014 Q&A under the Spending Clause (Count XI).  As relief against ED, Plaintiff seeks a declaratory judgment that the 2011 DCL and the 2014 Q&A are unlawful, as well as an order barring ED from adopting similar guidance or rules in the future.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court must "accept as true the allegations for which there is sufficient factual matter to render them plausible on their face." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018) (alteration and citations omitted).  But the Court need not do the same for "legal conclusion[s] couched as [] factual allegation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citations omitted). Thus, to survive a Rule 12(b)(1) motion to dismiss, Plaintiff must establish this Court's jurisdiction through sufficient allegations. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Similarly, to survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

717; *see also* 2014 Q&A at 4 ("In cases involving a student who meets the legal age of consent in his or her state, there will still be a strong presumption that sexual activity between an adult school employee and a student is unwelcome and nonconsensual.").

## ARGUMENT

I.    **The Court Lacks Subject Matter Jurisdiction Because Plaintiff Lacks Standing To Challenge Withdrawn Guidance Or Prohibit ED From Taking Unspecified Future Action.**

"Under Article III, federal courts do not adjudicate hypothetical or abstract disputes," nor do they "possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, --- S. Ct. ----, 2021 WL 2599472, at \*6 (U.S. June 25, 2021). Instead, Plaintiff bears the burden of establishing standing, "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)).

In order to demonstrate standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also, e.g.*, *6th Cong. Dist. Republican Comm. v. Alcorn*, 913 F.3d 393, 405 (4th Cir. 2019). The absence of standing is fatal to a court's subject matter jurisdiction. *See, e.g.*, *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230 (4th Cir. 2008).

Plaintiff here alleges "injury from the government's regulation of a third party"—i.e., recipients of federal funding like JMU—which means that she must make a "heightened showing" of standing. *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1273 (D.C. Cir. 2007). As the Supreme Court has explained, "[w]hen . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed," and standing "is ordinarily substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (citations omitted); *see also California v. Texas*, --- S. Ct. ----, 2021 WL 2459255,

6

at *7 (U.S. June 17, 2021) (same).   Courts are thus "reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

A.    **Plaintiff Lacks Standing To Challenge The 2011 DCL And 2014 Q&A, Which Were Withdrawn Before Plaintiff Was Accused Of Misconduct And Are Not In Effect Today.**

The heart of Plaintiff's case against ED is a challenge to the 2011 DCL and 2014 Q&A—guidance documents that were not in effect when Lese filed a Title IX complaint against Plaintiff in December 2018, were not in effect when Plaintiff filed this lawsuit in May 2021, and are not in effect now.   That challenge should be dismissed for lack of standing for two independent reasons: (1) the rescinded guidance documents did not cause Plaintiff any injury at the time of her Title IX proceeding, and (2) even if the rescinded guidance documents had contributed to Plaintiff's injury, no order against ED now would redress that injury.

1.    **The 2011 DCL And 2014 Q&A Were Withdrawn Before Plaintiff's Title IX Proceeding, And Could Not Have Caused Any Injury That Plaintiff Suffered.**

The most obvious defect in Plaintiff's standing is that the 2011 DCL and 2014 Q&A could not have caused the injury that Plaintiff allegedly suffered at JMU's hands almost two years after their rescission.   Plaintiff's theory appears to be that the 2011 DCL and 2014 Q&A affected JMU's adjudication of her complaint because the policy JMU applied at the time, Policy 1340, had been designed to reflect the advice contained in the 2011 DCL and 2014 Q&A.   *See, e.g.*, Compl. ¶¶ 128-129.   But Plaintiff acknowledges that once the 2011 DCL and 2014 Q&A were withdrawn and replaced by the 2017 Q&A, JMU should have stopped following them.   Plaintiff specifically alleges that JMU "ignored ED's and Secretary DeVos's September 2017 conclusions and pronouncements, and continued to implement the 2011 DCL and 2014 Q&A requirements through JMU's Title IX procedures," *id.* ¶ 85.   In other words, Plaintiff alleges that "[t]he University

7

Defendants rejected ED's instructions and refused to amend Policy #1340 or otherwise act to ensure protection of Plaintiff Reid's constitutional rights and her rights as protected by Title IX." Compl. ¶ 635; *see also id.* ¶ 98 ("ignored the 2017 Q&A"); *id.* ¶ 99 (same).

Since Plaintiff is alleging that JMU "rejected" and "ignored" ED's 2017 rescission and replacement of the 2011 and 2014 guidance, any resulting injury cannot be traceable to ED. Rather, under Fourth Circuit law, JMU's independent, voluntary actions break any causal chain stemming from ED. As the Fourth Circuit has explained, a party lacks standing if an intermediary "st[ands] between the plaintiff and the challenged action," *Frank Krasner Enters., Ltd. v. Montgomery Cnty.*, 401 F.3d 230, 235 (4th Cir. 2005), because otherwise standing would impermissibly "depend[] on the unfettered choices made by independent actors," *Lujan*, 504 U.S. at 562 (citation omitted); *accord, e.g.*, *Doe v. Obama*, 631 F.3d 157, 162 (4th Cir. 2011) ("a fundamental tenet of standing doctrine" is that where a third party "makes the independent decision that causes an injury, that injury is not fairly traceable" to the defendant).[3]

---

[3] It is true that causation may be found "where the plaintiff suffers an injury that is produced by the determinative or coercive effect of the defendant's conduct upon the action of someone else." *Lansdowne on the Potomac Homeowners Ass'n. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 197 (4th Cir. 2013) (alteration and citation omitted). But the complaint makes clear that even if the 2011 DCL and 2014 Q&A had a coercive effect while they were in force (a proposition that Defendants dispute, *see infra* Part II.A), JMU should have known that they were withdrawn and had no effect by the time of her Title IX hearing. For similar reasons, *Equity in Athletics, Inc. v. Department of Education*, 639 F.3d 91 (4th Cir. 2011), is distinguishable. In that case, the Fourth Circuit held that a plaintiff had standing to sue both ED and JMU to contend that JMU had wrongfully decided to eliminate certain varsity athletic teams, in reliance on ED Title IX guidance. Unlike in this case, in *Equity in Athletics* the relevant ED guidance was in effect at both the time of the challenged JMU decision and throughout the litigation. *See, e.g., id.* at 101 ("JMU announced that it was relying on the [guidance] in making the cuts; accordingly, a declaration invalidating [the guidance] would likely significantly affect JMU's decision."). In contrast, in this case, the challenged guidance had been rescinded well before the relevant decision.

Three further points bear emphasis.  *First*, the main aspect of the 2011 DCL and the 2014 Q&A that Plaintiff challenges is the statement that schools must apply the preponderance of the evidence standard in evaluating allegations of sexual misconduct.  *See, e.g.*, Compl. ¶¶ 41-47, 54-58, 70, 655.  Plaintiff expressly pleads, however, that JMU's standard of proof at the time of the 2011 DCL was *already* a "preponderance of probative, reliable and substantial evidence."  *Id.* ¶ 69; *see also id.* ¶ 121.  JMU's choice to use the preponderance standard thus predated, and could not have been caused by, either the 2011 DCL or the 2014 Q&A.

*Second*, as described more fully below, *see infra* Part II.A, the 2011 DCL and 2014 Q&A had no binding effect even prior to their rescission; they stated OCR's interpretation of what Title IX and its implementing regulations required, but they did not themselves require schools to do anything.

*Third* and finally, Plaintiff concedes that even if ED had required JMU to follow the 2011 DCL and 2014 Q&A at the time of her hearing, that requirement *still* would not have precluded JMU from reaching a fair resolution of Lese's complaint.  Plaintiff expressly pleads that "[e]ven if Policy #1340 applied, and had The University Defendants employed an appropriate investigation, hearing and appeal in this matter, they would have determined that Lese's allegations were false and that Plaintiff Reid did not violate University policy with regard to her relationship with Lese."  Compl. ¶ 609 (emphasis omitted).  Plaintiff's theory is thus not that ED's guidance compelled a finding of responsibility, but instead that JMU did not follow its own policies.  *See, e.g.*, *id.* ¶ 367 ("The University Defendants' adverse actions against Plaintiff Reid violated University policy . . . ."); *id.* ¶ 457 ("violation of clear and unequivocal University and public policy as set forth in JMU's own rules and regulations"); *id.* ¶ 491 ("violation of JMU policy"); *id.* ¶ 522 ("violation of JMU policies"); *id.* ¶ 586 ("violated University policy"); *id.* ¶ 590 ("did

not comply with University policy"). Plaintiff's allegation that JMU violated its own policies represents a clear break in the causal chain against ED. *Cf., e.g.*, *Vengalattore v. Cornell Univ.*, No. 18-1124, 2020 WL 2104706, at *4 (N.D.N.Y. May 1, 2020) (disciplinary action against faculty not traceable to ED guidance because discipline arose "directly, and only, from [Cornell's] findings that he violated [the Relationships Policy], which had been in effect since September of 1996, prior to the Guidance Documents"), *appeal pending*, No. 20-1514 (2d Cir.).

### 2. The 2011 DCL And 2014 Q&A Are Not In Effect Now, And An Order Against ED Could Not Redress Any Injury That Plaintiff Suffered.

Even if the 2011 DCL and 2014 Q&A had caused Plaintiff an injury in 2019, that would still not give her standing in 2021. Article III standing requires injury, causation, *and* redressability, and so "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 361 (4th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561), *cert. denied,* --- S. Ct. ----, 2021 WL 1725174 (U.S. May 3, 2021). Here, there are at least two independent reasons why no order against ED could redress Plaintiff's asserted injury: (1) the 2011 DCL and 2014 Q&A have already been withdrawn, and so there would be no relief left to award under the APA even if the guidance were subject to APA review, and (2) even if the guidance documents had not already been withdrawn, their withdrawal now would not redress the injury that Plaintiff allegedly suffered when JMU found her responsible for violating school policy two years ago.

*First*, ED has already withdrawn the 2011 DCL and 2014 Q&A. The APA permits courts to "hold unlawful and set aside" agency action, 5 U.S.C. § 706(2), but since ED has already withdrawn the challenged guidance, nothing is left to hold unlawful or set aside. It is therefore "impossible for [the] court to grant any effectual relief" beyond what ED has already done. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted); *see also, e.g.*, *LaRoque v. Holder*,

679 F.3d 905, 909 (D.C. Cir. 2012) (case is moot where "appellants have obtained everything that they could recover from this lawsuit" (alteration and citation omitted)).  As the D.C. Circuit has explained, "executive action rescinding or repromulgating a regulation can moot a challenge to its validity." *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 840 (D.C. Cir. 1985); *accord, e.g.*, *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 274 (D.C. Cir. 2001) (case moot where agency "has eliminated the allegedly unlawful provision").[4]

*Second*, even if the 2011 DCL and 2014 Q&A had not already been withdrawn, an order setting them aside now would not redress Plaintiff's alleged injuries, all of which stem from JMU's years-old determination that she violated its policies by engaging in a nonconsensual relationship. An order against ED would not compel JMU to remove the letter of reprimand from Plaintiff's JMU file, compel JMU to reconsider its finding of responsibility, or otherwise improve Plaintiff's job prospects—the only injuries identified in the complaint.  *See* Compl. ¶¶ 537, 538, 544, 616, 617.  Only JMU can make Plaintiff whole for the injuries she has alleged.  *See Vengalattore*, 2020 WL 2104706, at *5 (no redressability because Vengalattore "only speculates that the requested relief would result in Cornell altering its independent choice to find him in violation of [the Relationships Policy], and therefore improve his career prospects and his position with respect to Cornell, which is inadequate").

---

[4] Indeed, after the 2011 DCL and 2014 Q&A were withdrawn in 2017, plaintiffs in cases challenging those documents stipulated to the dismissal of their lawsuits.  *See, e.g.*, *Ehrhart v. U.S. Dep't of Educ.*, No. 16-1302 (N.D. Ga. Nov. 27, 2017), ECF No. 39, at 2 (jointly stipulating that "the litigation has now become moot"); *Doe v. Jackson*, No. 16-1158 (D.D.C. Feb. 21, 2018), ECF No. 36 (stipulating to dismissal).  Unlike in those cases, however, the defect here is appropriately analyzed through the lens of standing rather than mootness, because Plaintiff lacked an Article III interest in this case from the moment of its filing.  *See, e.g.*, *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) ("Unlike questions of mootness and ripeness, the standing inquiry asks whether a plaintiff had the requisite stake in the outcome of a case 'at the outset of the litigation.'" (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000))).

**B.     Plaintiff Lacks Standing To Seek An Order Precluding ED From Issuing Guidance Or Rules In The Future.**

In addition to asking the Court to set aside guidance that has already been rescinded, Plaintiff also seeks "a declaratory judgment forbidding Defendants Department of Education and Secretary Cardona from issuing substantially similar guidance or rules" in the future.  Compl. Prayer for Relief (vi).  Plaintiff lacks standing to request such a judgment because she fails to plausible allege either (1) that she will be subject to a Title IX hearing in the future, such that ED's Title IX rules or guidance will personally affect her, or (2) in any case, that ED will adopt unlawful guidance or rules.

The Declaratory Judgment Act does not empower federal courts to issue advisory opinions. *See California*, 2021 WL 2459255, at *6.  The statute requires "a case of actual controversy within [the Court's] jurisdiction," 28 U.S.C. § 2201(a), which means that "the dispute must be a 'case or controversy' within the confines of Article III of the United States Constitution." *White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167 (4th Cir. 1990); *see also, e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("Our decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" (quoting *Aetna Life Ins. Co v. Haworth*, 300 U.S. 227, 240-41 (1937))).  To obtain prospective relief, a plaintiff must do more than allege a past injury; instead, she must demonstrate the existence of either an "ongoing injury," *McBurney v. Cuccinelli*, 616 F.3d 393, 410-11 (4th Cir. 2010), or a future "'threatened injury that is certainly impending,'" *Clapper*, 568 U.S. at 401 (citation, alteration, and internal quotation marks omitted).

Plaintiff fails to make this showing for two reasons.  First and foremost, Plaintiff makes no plausible allegation—indeed, no allegation at all—that she is herself likely to be a party to a Title IX proceeding in the future.  As in *O'Shea v. Littleton*, "[p]ast exposure to illegal conduct" is not a basis for seeking prospective relief, 414 U.S. 488, 495 (1974), and "attempting to anticipate whether and when" Plaintiff will be "charged with" violations of Title IX in the future "takes us into the area of speculation and conjecture," *id.* at 497; *see also, e.g.*, *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018) ("plaintiff seeking prospective injunctive relief" "may not rest on the University's past conduct"), *cert. denied,* 139 S. Ct. 1292 (2019); Erwin Chemerinsky, Federal Jurisdiction § 2.3.2, at 73 (8th ed. 2021) (noting that "lower courts consistently have applied [these principles] to prevent standing in suits seeking declaratory judgments where standing for injunctive relief would be unavailable").

Second, Plaintiff provides only speculation that ED will issue unlawful guidance in the future.  Plaintiff states that "Defendants ED and Cardona have publicly stated an intent to return to requiring schools to follow the procedures, mandates and requirements set forth in the 2011 DCL related to Title IX complaints," Compl. ¶¶ 662; *see also id.* ¶ 674, but Plaintiff nowhere identifies (1) the statements to which she is referring; or (2) any reason to believe that any future ED action would be unlawful.  Plaintiff simply "speculate[s] and makes[s] assumptions" about ED's future plans, which is inadequate to establish standing.  *Clapper*, 568 U.S. at 411; *see also, e.g.*, *Wild Virginia v. Council on Envt'l Quality*, --- F. Supp. 3d ----, 2021 WL 2521561, at *10 (W.D. Va. June 21, 2021) (no standing where plaintiffs "cannot say . . . what the yet-to-be-written agency-specific procedures will require or permit").  Plaintiff's allegation that ED will reprise the 2011 DCL and 2014 Q&A is speculative; indeed, to the extent ED has described its future plans, they focus on an anticipated legislative rulemaking.  And any assumption that ED will act

13

unlawfully is incompatible with the presumption of regularity to which the federal government is entitled.  *See, e.g.*, *Almy v. Sebelius*, 679 F.3d 297, 309 (4th Cir. 2012).

Finally, the judgment Plaintiff requests—one that would "forbid[] Defendants Department of Education and Secretary Cardona from issuing substantially similar guidance or rules," Compl. Prayer for Relief (vi)—is impermissibly vague.  At the outset, declaratory judgments do not "forbid" parties from doing anything; they are by definition noncoercive orders that "declare the rights and other legal relations of any interested party."  28 U.S.C. § 2201(a).  In any case, the Rules require that coercive relief "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required," Fed. R. Civ. P. 65(d)(1)(C).  This requirement "protects the party against which an injunction is issued by requiring clear notice as to what that party must do or refrain from doing." *Abbott v. Perez*, 138 S. Ct. 2305, 2321 (2018); *see also, e.g.*, *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).  Plaintiff's vague request for an order barring Defendants from issuing guidance that is "substantially similar" to the 2011 DCL or 2014 Q&A is directly contrary to Rule 65:  it refers to other documents (i.e., the 2011 DCL and the 2014 Q&A) to describe what ED would be prohibited from doing, and it is not nearly "clear enough to inform [ED] of what it may and may not do."  *Pashby v. Delia*, 709 F.3d 307, 331 (4th Cir. 2013).

## II.   The Court Lacks Subject Matter Jurisdiction Over Plaintiff's APA Claims Because She Does Not Challenge Final Agency Action For Which She Lacks An Adequate Alternative Remedy.

Even if Plaintiff had standing to challenge the 2011 DCL and 2014 Q&A, this Court would still lack jurisdiction over Plaintiff's APA claims.  As relevant here, the APA permits a plaintiff to challenge "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  Yet neither the 2011 DCL nor the 2014 Q&A was final agency action, and as this lawsuit amply demonstrates, Plaintiff has an adequate alternative judicial remedy for her asserted injuries. Because Plaintiff does not satisfy the requirements of 5 U.S.C. § 704, there is no relevant waiver

of the government's sovereign immunity, and the Court lacks jurisdiction to consider Plaintiff's APA claims.  *See Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*, 990 F.3d 834, 839 (4th Cir. 2021) (failure to comply with § 704 is jurisdictional failure).

### A.  Neither The 2011 DCL Nor The 2014 Q&A Was Final Agency Action.

At the outset, neither the 2011 DCL nor the 2014 Q&A was final agency action.  Agency action is final only if two elements are met: "[f]irst, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined or from which legal consequences will flow."  *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 194 (4th Cir. 2013) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

Neither the 2011 DCL nor the 2014 Q&A satisfied the second element of the finality test, as neither document imposed any legal consequences or determined any rights or obligations.  The 2011 DCL made clear that it constituted "policy guidance to provide recipients with information to assist them in meeting their obligations," but that "OCR's legal authority is based on [preexisting] laws and regulations."  2011 DCL at 1 n.1.  It further explained that it "does not add requirements to applicable law, but provides information and examples to inform recipients about how OCR evaluates whether covered entities are complying with their legal obligations."  *Id.*  The 2014 Q&A contained nearly identical language disclaiming any binding legal effect.  *See* 2014 Q&A at 1 n.1.

Fourth Circuit precedent thus compels the conclusion that the 2011 DCL and 2014 Q&A were not final agency action.  In *Golden & Zimmerman, LLC v. Domenech*, the court held that an agency's response to a frequently asked question was not final agency action because it "does not itself *determine* the law or the consequences of not following it."  599 F.3d at 433.  Rather, the FAQ's "role, as stated in the publication, is simply to *inform* licensees of what the law, previously

enacted or adopted, is, and its publication did not itself alter the legal landscape." *Id.* "Indeed, if the ATF had never published the Reference Guide and FAQ F13, the ATF would still have had the authority to prosecute licensees for engaging in the conduct described in FAQ F13 because legal consequences do not emanate from FAQ F13 but from the Gun Control Act and its implementing regulations." *Id.*

As in *Golden & Zimmerman*, neither the 2011 DCL nor the 2014 Q&A "determine[d] the law or the consequences of not following it." 599 F.3d at 433 (emphasis omitted). Rather, those documents "stated in the publication" that they "inform" recipients of "what the law, previously enacted or adopted, is," *id.*, and that any enforcement would flow from those existing legal authorities. Whatever "coercive pressures on third parties" Plaintiff thinks the 2011 DCL or 2014 Q&A had, it "carrie[d] no legally binding authority," *Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S. EPA*, 313 F.3d 852, 859 (4th Cir. 2002), and therefore was not final agency action. *See also, e.g.*, *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 460 (4th Cir. 2004) (no final agency action without "regulatory effect reviewable in court"), *appeal after remand sub. nom. Invention Submission Corp. v. Dudas*, 413 F.3d 411 (4th Cir. 2005). Neither the 2011 DCL nor the 2014 Q&A was final agency action and the APA claims must be dismissed on that basis.

### B. Plaintiff Has An Adequate Alternative Remedy.

Plaintiff's APA claims also fail because she has an adequate alternative remedy for her asserted injuries, which is to sue JMU—as she has done here. While a litigant might prefer to sue a regulator for what it believes is inadequate regulation, "a private cause of action against a third party otherwise subject to agency regulation" constitutes an adequate alternative remedy. *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009) (quoting *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1271 (D.C. Cir. 2005)). Such suits provide an adequate remedy even if "individual actions against discriminators cannot redress

16

the systemic lags and lapses by federal monitors about which they complain." *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990). "Suits directly against the discriminating entities may be more arduous, and less effective in providing systemic relief, than continuing judicial oversight of federal government enforcement." *Id.* "But under our precedent, situation-specific litigation affords an adequate, even if imperfect, remedy." *Id.*; *see also, e.g.*, *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004) (rejecting challenge to ED guidance: "the availability of a private cause of action directly against universities that discriminate in violation of Title IX constitutes an adequate remedy that bars appellants' case"); *see also Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 383 F.3d 1047 (D.C. Cir. 2004) (seven judges concurring in denial of rehearing en banc).

These principles apply fully here. Plaintiff believes that JMU made discretionary choices that violated her rights, but if that is correct, she can be made whole by prevailing in her lawsuit against JMU. The availability of that remedy dooms her APA claims against ED. *See, e.g.*, Mem. & Order, *Nat'l Coal. Against Violent Athletes v. Dep't of Educ.*, No. 17-12043 (D. Mass. Dec. 3, 2020), ECF No. 112, at 20 (dismissing challenge to 2017 Q&A because "an adequate, if imperfect, remedy exists in the form of private action against the schools").

## III.    Plaintiff's APA Claims Are Time Barred.

Finally, even if this Court had jurisdiction to consider a challenge to the 2011 DCL or the 2014 Q&A, Plaintiff's claims would be time barred because both guidance documents were issued more than six years ago. *See* 28 U.S.C. § 2401(a) (with certain inapplicable exceptions, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues").

The Fourth Circuit has unequivocally held that in a facial challenge to agency action under the APA, the limitations period begins to run on the date of the agency action. *See Hire Order*,

698 F.3d at 170 ("[T]he limitations period begins to run when the agency publishes the regulation." (quoting *Dunn–McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997)); *accord Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, 983 F.3d 671, 682 (4th Cir. 2020).  In *Hire Order*, the Fourth Circuit considered and rejected the contention that the period does not begin to run until a plaintiff is personally affected by the challenged agency action. *See Hire Order*, 698 F.3d at 170 (plaintiffs' argument "that their cause of action did not accrue until they became federally licensed firearms dealers in 2008 utterly fails"); *accord, e.g.*, *Exela Pharma Scis., LLC v. Kappos*, No. 12-469, 2012 WL 6697068 (E.D. Va. Dec. 2012) (*Hire Order* required reversal of prior denial of motion to dismiss: under *Hire Order*, "the need to have a fixed end to potential opposition to regulations trumped the potential perpetual number of years parties might claim injury for its regulations effects"), *aff'd sub nom. Exela Pharma Scis., LLC v. Lee*, 781 F.3d 1349 (Fed. Cir. 2015); *Peri & Sons Farms, Inc. v. Acosta*, 374 F. Supp. 3d 63, 72 n.5 (D.D.C. 2019) (discussing *Hire Order*).

Plaintiff here brings a facial challenge to the 2011 DCL and 2014 Q&A.  She is "seeking to enjoin the Rules as improperly issued," *Outdoor Amusement*, 983 F.3d at 682, and she seeks a "remedy that would go beyond any applications of the contested rules to [her]," *Odyssey Logistics & Tech. Corp. v. Iancu*, 959 F.3d 1104, 1111 (Fed. Cir. 2020) (applying Fourth Circuit law). Because more than six years have passed since the issuance of either the 2011 DCL or the 2014 Q&A, her APA claims are time barred.  And because the same statute of limitations applies to constitutional claims, Plaintiff's Spending Clause claim is time barred for the same reason.  *See,*

*e.g.*, *United States v. Minor*, 228 F.3d 352, 359 (4th Cir. 2000), *appeal after remand,* 25 F. App'x 208 (4th Cir. 2002).[5]

## CONCLUSION

The Court should grant ED's motion to dismiss.


Dated:  July 2, 2021                                        Respectfully submitted,

                                                           BRIAN M. BOYNTON
                                                           Acting Assistant Attorney General

                                                           CARLOTTA P. WELLS
                                                           Assistant Director, Federal Programs Branch

                                                           */s/ Steven A. Myers*
                                                           STEVEN A. MYERS
                                                           Senior Trial Counsel (NY Bar No. 4823043)
                                                           United States Department of Justice
                                                           Civil Division, Federal Programs Branch
                                                           1100 L Street, NW
                                                           Washington, DC 20005
                                                           Tel:  (202) 305-8648
                                                           Fax:  (202) 616-8470
                                                           E-mail:  steven.a.myers@usdoj.gov

                                                           *Counsel for Defendants Department of*
                                                           *Education and Secretary Cardona*

---

[5] Because the deficiency appears on the face of the complaint, Plaintiff's claims may be dismissed on that basis.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

**CERTIFICATE OF SERVICE**

I hereby certify I served this document today by filing it using the Court's CM/ECF system, which will automatically notify all counsel of record.

Dated:  July 2, 2021

*/s/ Steven A. Myers*

Steven A. Myers