CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

August 05, 2024
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| ALYSSA REID | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:21-cv-00032 |
| | ) | |
| JAMES MADISON UNIVERSITY, et al., | ) | By: Elizabeth K. Dillon |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

Alyssa Reid, formerly a faculty member at James Madison University (JMU), brings this action against JMU and the following university officials: Heather Coltman, Provost and Senior Vice President for Academic Affairs; Robert Aguirre, Dean of the College of Arts and letters; and Amy Sirocky-Meck, Title IX Coordinator (collectively "University Defendants"). Reid alleges due process and Title IX violations arising from a Title IX investigation, hearing, and reprimand sanction concerning Reid's romantic involvement with Kathryn Lese, who was a graduate student at JMU when they began their relationship. The University Defendants have moved to dismiss for failure to state a claim and for lack of subject matter jurisdiction. (Mot. to Dismiss, Dkt. No. 51.[1]) Because Reid has failed to adequately plead elements of each of her claims and because some of JMU's jurisdictional challenges have merit, the motion will be granted.

## I. BACKGROUND

### A. Additional Documents Considered

Before setting forth the relevant background from Reid's complaint, the court must first

---

[1] The parties' briefing incorporates by reference parts of their prior briefing on an earlier motion to dismiss. The court has considered the incorporated sections and includes citations to them herein.

determine which documents it can consider in ruling on the motion to dismiss.  Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), the court is limited to considering the sufficiency of the allegations set forth in the complaint and the "documents attached or incorporated into the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. due Pont de Nemours v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)).  District courts have discretion "to determine whether or not to 'exclude' matters outside the pleadings." *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997).  Usually, when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); *see also Zak*, 780 F.3d at 606.  The court may, however, consider a document attached to a motion to dismiss—without treating the motion as one for summary judgment—if that document is integral to the complaint and there is no dispute about its authenticity.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

Here, Reid attached several documents to her complaint, all of which the court considers. Among other documents, she provides four sexual harassment policies and procedures, dated December 2002, August 2012, August 2016, and January 2018.  She also attached Kathryn "Katie" Lese's Title IX statement; an email from defendant Sirocky-Meck notifying Reid that she had been named in a complaint; an email from her supervisor, Dr. Fife, withdrawing her from consideration for a promotion; the hearing panel's decision finding her responsible for violating Policy #1340; and defendant Coltman's decision on the final appeal.  (*See generally* Dkt. Nos. 1-1 through 1-9 (exhibits to complaint).)

Defendants attach a number of documents to their brief in support of their motion to dismiss, and both Reid and defendants refer to and rely on these documents.  Specifically,

defendants provide the complete copies of some of the documents Reid attached to her complaint, i.e., JMU's faculty handbooks for the entire period of Reid's employment, from 2012–2019, which incorporate the various sexual harassment policies Reid provides.  They also provide Reid's employment contract and defendant Aguirre's decision on Reid's first appeal. Reid agrees that these documents may be considered at the motion to dismiss stage.  (Transcript of Sept. 29, 2021 Hr'g (hereinafter Tr.) 6:1–8, Dkt. No. 36.)  The court concludes that it is appropriate to consider them because they are integral to Reid's complaint and she does not dispute their authenticity.  Thus, the court considers the documents defendants attached as exhibits to the brief in support of their motion to dismiss.  (*See generally* Dkt. Nos. 10-1 through 10-3.)

## B.  Statement of Facts

The following facts are taken from the allegations in Reid's complaint and, at this stage, are presumed to be true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Reid worked at JMU as Assistant Director of the Individual Events Team in the School of Communication from 2012 until her voluntary resignation shortly after the disputed Title IX proceedings.  (Compl. ¶¶ 242, 460.)  The court relies on her employment contract to clarify the terms of Reid's employment.  (Pl.'s Emp. Cont., Dkt. No. 10-2.)  Reid was employed as a Lecturer, which is an untenured rank subject to renewable term appointments.  (*Id.* at 2.)  Reid was initially offered a three-year term which could renew for additional one-year terms; however, the contract that was ultimately signed granted an initial one-year term which could renew for additional one-year terms.  (*Id.* at 1, 2 § 1.2.)  The contract provides for automatic renewal to additional one-year terms if notice of non-renewal is not received by a specified date,

with longer notice requirements for employees with more years of service.  (*Id.* § 5.1.)  The decision to renew the contract is at JMU's discretion, with no guarantee of renewal.  (*Id.*)  The contract also reserves to JMU the right to "terminate this agreement before the ending date for any of the reasons specified in the policies and procedures of JMU, including but not limited to . . ." a laundry list of reasons such as funding issues, program termination, and misconduct.  (*Id.* § 6.1.)  This contract was signed by Reid on August 1, 2012.  (*Id.* at 4.)

Reid's claims stem from a Title IX investigation that took place during the 2018–2019 school year concerning her relationship with Lese, who was a graduate student when their relationship began in 2015.  (Compl. ¶¶ 299, 301(i).)  Lese initiated this relationship, and both agreed to keep it quiet while Lese was still a student, in order to prevent harmful gossip within the department.  (*Id.* ¶¶ 267–71, 276.)  Their relationship lasted for over two years until February 2018, and by all accounts it did not end well.  (*Id.* ¶¶ 286–87; Title IX Statement 5, Dkt. No. 1-5.)  According to the complaint, Lese thereafter stalked Reid, sent her abusive and threatening text messages, policed her social media, and harassed her.  Ultimately, Lese filed what Reid describes as a "retaliatory" Title IX complaint against Reid on December 4, 2018.  (Compl. ¶¶ 287–89, 293; *see generally* Title IX Statement.)  This complaint alleged unfair power dynamics that led to a toxic relationship and work environment during the period of their relationship when Lese was still a graduate student, from November 2015 through May 2016. (Compl. ¶¶ 299, 301(f)–(g), 310; Title IX Statement 4–5.)

Per communications sent to Reid by Sirocky-Meck, this complaint was investigated pursuant to Policy #1340.  (Compl. ¶¶ 10, 337.)  However, Policy #1340 was not enacted until September 2016.  (*Id.* ¶ 177).  The relevant time period of the accusations was November 2015

through May 2016. (*Id.* ¶ 310.) Therefore, the policy applicable to this complaint was actually Policy #1324. (*Id.* ¶¶ 312, 421–22.)

Two main differences between Policy #1324 and Policy #1340 are relevant here. The first is that Policy #1324 contained a provision mandating dismissal of claims brought more than 300 days after the last date of the complained-of behavior, at the very latest. (*Id.* ¶¶ 145–46.) Because the complaint was filed more than 650 days after the final date that Lese had been a student, Reid argues, the complaint should have been dismissed at the outset. (*Id.* ¶ 300.) The second is that Policy #1340 contains language effectively treating any relationship between a faculty member and a student as a prohibited "non-consensual relationship," the type of relationship for which Reid was ultimately found responsible. (*Id.* ¶ 417.) A similar definition does not exist in Policy #1324. (*Id.* ¶¶ 184–85, 187.) Reid argues that because of these differences, she would never have been found responsible for violating Policy #1324.[2] (*Id.* ¶¶ 421–22.)

Lese's complaint was investigated despite the time that had elapsed between the complained-of period of the relationship and the filing of the Title IX complaint. (*Id.* ¶ 338.) Sirocky-Meck appointed herself Title IX Officer responsible for the investigation, and the investigation ultimately led to a hearing panel to determine responsibility. (*Id.* ¶¶ 313, 344.) The hearing panel (whose members are not named in the complaint, with one exception[3]) convened

---

[2] Defendants point out that throughout Reid's relationship with Lese, including under Policy #1324, JMU prohibited faculty from engaging in sexual harassment, and they argue that the behavior for which Reid was found responsible also met the earlier definition of sexual harassment that existed in JMU's promulgated policies and procedures at the time of the disputed conduct. (Defs.' Br. 7, Dkt. No. 10; Policy #1324 at 3–4.)

[3] Hearing panel chair Pamela Sullivan is mentioned in paragraph 417 of the complaint, which refers to her as a defendant and states that she issued the hearing panel's decision on April 1, 2019. (Compl. ¶ 417.) Ms. Sullivan is nonetheless *not* a named defendant on this case. (*See* Compl. 1.) Neither is there any indication that she could be one of five "Jane or John Doe" defendants listed on the complaint. *See* discussion of these unnamed defendants *infra* § III-D.

on March 28, 2019.  (*Id.* ¶ 372.)  Reid requested a member of the LGBTQ community be placed

on the panel.  (*Id.* ¶ 356.)  Sirocky-Meck, who was responsible for assembling the hearing panel

as Title IX Coordinator, declined to comply with this request.  (*Id.* ¶¶ 355-56.)  There is no

allegation in the complaint that Reid challenged any of the hearing panel members, or indeed that

she would have had "good cause" to do so.  (*See* Policy #1340 § 6.6.8.2, Dkt. No. 1-4.[4])  The

hearing panel ultimately found Reid responsible for engaging in a non-consensual relationship in

violation of Policy #1340.  (Compl. ¶ 417.)  Reid timely appealed this decision.  (*Id.* ¶ 430.)

Defendant Aguirre, however, did not timely review Reid's appeal, ultimately affirming the

hearing panel's decision two weeks after his response was due under policy.  (*Id.* ¶¶ 431-34.)

Reid again appealed this decision in a timely manner on May 5, 2019.  (*Id.* ¶ 438; Dkt. No. 1-9 at

2.)  And again, defendant Coltman failed to meet the decision deadline of five days, instead

waiting several weeks before affirming the hearing panel's decision on June 19, 2019.  (Policy

#1340 ¶ 6.6.8.19; Compl. ¶¶ 439, 441–42.)  These delays were reportedly necessary to allow for

a "thorough review" of the "voluminous materials."  (Aguirre's Decision 1, Dkt. No. 1-9; Compl.

¶ 440.)  The ultimate sanction imposed for this finding of responsibility was a written reprimand.

(Compl. ¶ 419.)  Thereafter, Reid chose to resign, although when exactly this occurred is not

clear from details provided in the complaint.  (*Id.* ¶ 460.)

     Reid's complaint lists a multitude of problems with the investigation process, including

procedural errors in the filing and investigation of the complaint, failure to provide Reid with

evidence in a timely manner, retroactive misapplication of a policy that did not exist at the time

of the infraction, consideration of improperly admitted documents, and improper notice in

---

[4] There is no mention of a hearing panel to decide responsibility in Policy #1324, which was in place during the disputed events and which, Reid argues, should have governed her investigation and disciplinary proceedings.  (*See generally* Policy #1324, Dkt. No. 1-2.)

violation of JMU policy.  (*Id.* ¶¶ 314, 318, 320, 325, 326(a–d), 334, 337, 339–41, 361, 374, 379–81, 422, 427–29, 431, 435–37.)  She also complains that she was denied consideration for a promotion before a finding of responsibility had been made.  (*Id.* ¶¶ 364–66.)

Reid's complaint originally included other counts and other defendants.[5]  As is relevant to the University Defendants, this court originally dismissed the case in 2022, after concluding that Reid's claims were time-barred, among other reasons.  *Reid v. James Madison Univ.*, No. 5:21-cv-00032, 2022 WL 909845, at *10 (W.D. Va. Mar. 29, 2022).  Reid successfully appealed the dismissal of Counts I–IV, and the case has been remanded for further proceedings.  *Reid v. James Madison Univ.*, 90 F.4th 311, 323 (4th Cir. 2024).

As the case stands today, there are four counts pending against the University Defendants.  Counts I, II, and III are brought pursuant to 42 U.S.C. § 1983 and the Virginia Constitution for various due process violations: refusing to enforce the correct JMU policy (Count I), failing to allow confrontation and cross-examination of witnesses (Count II), and retroactive application of a JMU policy (Count III).  She further alleges a Title IX violation (Count IV) against the University Defendants.  All claims are brought against JMU and also the individual University Defendants, in both their individual and official capacities.  (Compl. ¶ 11.)  The only other remaining defendants are "Jane and John Does 1–5."

---

[5]  Reid's breach of contract claim (Count XII) against the University Defendants was withdrawn before the court's first ruling on the motions to dismiss.  Reid also brought various claims under the Administrative Procedure Act, 5 U.S.C. § 555, against the Department of Education and Secretary Miguel Cardona (Counts V–XI); however, she did not appeal the dismissal of those counts. Additionally, Reid voluntarily dismissed Jonathan Alger, President of JMU, as a defendant on May 17, 2024.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss for Lack of Jurisdiction Under Rule 12(b)(1)

Defendants first move to dismiss for lack of jurisdiction based on Eleventh Amendment immunity.  Courts typically treat this argument as a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), and this court also does so.[6]  *E.g.*, *Corbin v. Movassaghi*, No. 6:22-CV-00012, 2022 WL 3579903, at *3 (W.D. Va. Aug. 19, 2022); *Va. Uranium, Inc. v. McAuliffe*, 147 F. Supp. 3d 462, 466 & n.4 (W.D. Va. 2015); *see also Murphy v. Virginia*, No. 21-1253, 2022 WL 17484286, at *1 (4th Cir. Dec. 7, 2022) (noting district court's dismissal under Rule 12(b)(1) based on Eleventh Amendment immunity and reviewing it under Rule 12(b)(1) standard).

When an Eleventh Amendment argument relies on the pleadings alone, the standard is effectively the same under Rule 12(b)(1) as 12(b)(6).  *Va. Uranium, Inc.*, 147 F. Supp. 3d at 466–67.  "A Rule 12(b)(1) motion to dismiss should be granted 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'"  *Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Baltimore*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999)).  Put differently, the allegations in the complaint are assumed to be true and the motion "must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Young v. Bishop*, No. CV TDC-16-0242, 2017 WL 784664, at *2 (D. Md. Feb. 28, 2017) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).

---

[6]  In *Constantine v. Rectors & Visitors of George Mason University*, 411 F.3d 474 (4th Cir. 2005), the Fourth Circuit addressed the nature of Eleventh Amendment immunity as a species of jurisdiction that shares elements of both subject-matter jurisdiction and personal jurisdiction.  411 F.3d at 480–82.  It ultimately concluded that such immunity is not a limitation on a federal court's subject-matter jurisdiction, but it is an immunity from suit. The *Constantine* Court further discussed the circumstances when and where a district court must address Eleventh Amendment questions before addressing the sufficiency of allegations under Rule 12(b)(6).  Following its instructions here, the court will address the Eleventh Amendment issues prior to reaching the merits of any claims.

## B.  Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [her] to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).  The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, the court must accept as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint. *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but pleadings which are conclusory "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

### III.  DISCUSSION

## A.  Jurisdictional Challenges

Although some jurisdictional issues were raised in the briefing, it appears based on the briefing and concessions at the hearing that the parties are in agreement as to the proper resolution of those issues.  First, defendants correctly argue that the due process claims against JMU—under both Section 1983 and the Virginia Constitution—must be dismissed because JMU is entitled to Eleventh Amendment protection. *See Will v. Mich. Dep't of State Police*, 491 U.S.

58, 71 (1989) (explaining that, based on Eleventh Amendment immunity, a State is not a

"person" subject to suit under § 1983 and is immune from suit in federal court for violations of

state law, subject to limited exceptions); *Regents of Univ. of Cal. V. Doe*, 519 U.S. 425, 429

(1997) (extending such immunity to "state agents and state instrumentalities").  This includes

immunity claims for prospective injunctive relief under state law.  *Equity in Athletics, Inc. v.

Dep't of Educ.*, 639 F.3d 91, 107 (4th Cir. 2011) (affirming district court's holding that the

Eleventh Amendment bars claims for injunctive relief against state agencies or instrumentalities,

such as JMU, based on state law); *Armstrong v. James Madison Univ.*, No. 5:16-cv-00053, 2017

WL 2390234, at *5 (W.D. Va. Feb. 23, 2017) (recommending that "all claims brought under

§ 1983 and Virginia law against JMU, along with all such claims seeking monetary damages

against the other Defendants in their official capacities, be dismissed with prejudice"), report and

recommendation adopted, 2017 WL 2399338 (W.D. Va. June 1, 2017).  This immunity also

precludes Reid's claims against JMU for prospective relief.  *See Pennhurst State Sch. & Hosp. v.

Halderman*, 465 U.S. 89, 106, 124–25 (1984) (holding that Eleventh Amendment immunity

precludes federal courts from "enjoin[ing] . . . state institutions and state officials on the basis of .

. . state law").  Reid concedes this argument.  (Pl.'s Resp. 34 n.11, Dkt. No. 17 (agreeing that her

claims "for prospective injunctive relief against JMU . . . should be dismissed").)

The individual University Defendants also argue that sovereign immunity bars Reid's

official-capacity claims for monetary damages against them under § 1983.  (*See* Br. Supp. Mot.

to Dismiss 14–15, Dkt. No. 10.)  Reid does not appear to dispute that such claims are barred, but

she argues that much of the relief she seeks is prospective injunctive relief and "fit[s]

comfortably within the *Ex parte Young* exception and cannot be dismissed."  (Pl.'s Resp. 34.)

And that is a position with which the University Defendants agree.  (Tr. 44; *see also* Defs.' Reply

in Support of Mot. to Dismiss at 7 n.6, Dkt. No. 22 (conceding that the Eleventh Amendment would not bar official-capacity claims for prospective relief against the individual defendants).)

Thus, with the agreement of the parties and finding it appropriate and proper, the court will dismiss without prejudice as barred by Eleventh Amendment immunity: (1) all due process claims against JMU, under both § 1983 and the Virginia Constitution; and (2) claims for money damages against the other defendants in their official capacities as to Counts I–III.  This leaves in the case the Title IX claim, and, as to the § 1983 claims against the individual University Defendants, both individual-capacity claims and official-capacity claims for prospective relief.

## B.  Due Process Claims[7]

To allege a procedural due process claim, a plaintiff must show (1) that she had a property or liberty interest, (2) of which a state actor deprived her, (3) without due process of law.  *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988).  "Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  To possess a property interest, a claimant "must have more than an abstract need or desire for it.  [She] must have more than a unilateral expectation of it.  [She] must, instead, have a legitimate claim of entitlement to it."  *Id.*  Because Reid fails to allege the first element, her due process claims must be dismissed.

---

[7] As the Fourth Circuit did in its opinion in this case, the court focuses on the § 1983 due process claims and not the due process claims brought under Virginia Constitution.  The same analysis applies to Reid's due process claims brought under the Constitution of Virginia because the Commonwealth's protections "are co-extensive with those of the federal constitution."  *Reid v. James Madison Univ.*, 90 F.4th 311, 317 n.6 (citing *Shivaee v. Commonwealth*, 613 S.E.2d 570, 574 (Va. 2005)); *see also Mandel v. Allen*, 81 F.3d 478, 479 n. 2 (4th Cir. 1996) (describing federal and Virginia due process protections as "coterminous.").  Further, and in light of its dismissal of the due process claims, the court does not reach defendants' arguments that there is no private cause of action and no damages remedy for violations of due process under the Virginia Constitution.  (*See* Br. Supp. Renewed Mot. Dismiss 4, Dkt. No. 52.)

1. **Reid fails to allege a property interest.**

   *a.   Reid has no property interest in continued employment as an at-will employee.*

Reid has failed to allege any basis, contractual or otherwise, to infer a protectible property interest in her continued employment at JMU.  A property interest in continued employment is "created and [its] dimensions are defined by an independent source such as state" statutes or rules entitling the citizen to certain benefits.  *Roth*, 408 U.S. at 577 (finding no property or liberty interest where public university refused to renew a teacher's one-year contract).  As *Roth* made clear, a property interest is created only where there is "a legitimate claim of entitlement to it."  *Id.*  This claim of entitlement may arise from state statutes, contracts, regulations, or policies.  *Id.* at 576–78.  Under Virginia law, there is a strong presumption towards at-will employment, and employees in Virginia who are terminable at-will have no property interest in continued employment.  *See County of Giles v. Wines*, 546 S.E.2d 721, 723 (Va. 2001); *see also Cominelli v. Rector & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 713 (W.D. Va. 2008).

Courts have repeatedly upheld Virginia's presumption of at-will employment despite employee handbooks and contracts that provided permissible grounds for termination and requisite grievance procedures.  *E.g., Jenkins v. Weatherholtz*, 909 F.2d 105, 107–108 (4th Cir. 1990); *Giles*, 546 S.E.2d at 722–23.  The *Jenkins* court held, for example, that policies and procedures that established permissible grounds for termination did not give rise to an "expectancy of continued employment," and did not negate at-will employment status of sheriff's deputies mandated by statute in the state of Virginia.  909 F.2d at 107–08.  Even where an employee handbook stated that "An employee *may* be discharged for . . . just cause," the

provision was insufficient to overcome Virginia's strong presumption of at-will employment. *Giles*, 546 S.E.2d at 722–23 (emphasis added).

However, specific provisions of employment agreements can create protectible property rights in continued employment. *Stone*, 855 F.2d at 172; *Perry v. Sindermann*, 408 U.S. 593, 602 (1972). In contrast to *Giles*, the Fourth Circuit found that a tenured faculty member had a property interest in continued employment when an employment contract provided that he could *only* be terminated for cause. *Stone*, 855 F.2d at 172. And when a faculty member alleged that the university system fostered a mutual understanding of a *de facto* tenure policy among faculty members, the Supreme Court found that an actual dispute of material fact existed regarding the plaintiff's property interest in continued employment. *Perry*, 408 U.S. at 600, 602–03 (overturning the district court's entry of summary judgment for the employer). On the other hand, a faculty member who was hired for a one-year term with a set end date was not entitled to continued employment when state law provided that new teachers without tenure were entitled to nothing beyond their one-year appointment, and the university informed him of his non-renewal halfway through his term of employment. *Roth*, 408 U.S. at 566.

This case has little in common with the cases where a property interest was found. Reid's employment contract specifies that she is an untenured faculty member on a renewable-term basis, more akin to the renewable-term faculty member in *Roth* who had no property interest than the tenured faculty member in *Stone*. *See Roth*, 408 U.S. at 566; *contra Stone*, 855 F.2d at 172; (Pl.'s Emp. Cont. at 3 ¶ 5.1.) Additionally, instead of allowing termination only for cause, Reid's employment contract provides several permissive grounds for termination—such as program reduction, unsatisfactory performance, or financial exigency—reserving the right to terminate the agreement prior to its ending date "at any time upon written notice." *See Stone*, 855 F.2d at 172;

(Pl.'s Emp. Cont. at 4 ¶ 6.1.)  Reid fails to allege any factors that would lead her reasonably to rely on continued employment, such as a *de facto* tenure policy like the one present in *Perry*. 408 U.S. at 600.

Indeed, many of the factors that precluded a property interest in prior cases are at play here.  JMU's disciplinary policies and procedures provide a framework for it to operate within, but much like both *Jenkins* and *Giles*, the existence of such policies is not enough to create a protected property interest in the face of Virginia's presumption towards at-will employment. *Jenkins*, 909 F.2d at 107–08; *Giles*, 546 S.E.2d at 722–23.  Reid's employment as a renewable-term appointment is, in fact, most similar to the faculty member in *Roth*, who had no entitlement to continued employment when employed on a renewable basis with a set contract-end date.  408 U.S. at 566.

Because Reid's employment contract lists many permissive ways that she could be terminated, including prior to her contract's end date "at any time upon written notice," she has no contractual basis of entitlement to a protected property interest in her continued employment. (Pl.'s Emp. Cont. at 4 ¶ 6.1.)  The policies and procedures set forth for handling disciplinary matters also fail to overcome Virginia's strong presumption towards at-will employment.  *Giles*, 546 S.E.2d at 722–23.  Therefore, the court finds that Reid has failed to allege a protectible property interest in continued employment at JMU.

> b. *Reid has not sufficiently alleged a property interest derived from JMU's policies and procedures.*

Reid also alleges that she had a "protected property interest in being able to rely upon JMU's policies and procedures" and in "[d]efendants' adherence [to] and compliance with JMU's policies and procedures." (Compl. ¶¶ 473–74.)  From her complaint and her arguments before this court, it appears that she is arguing that she should not have been disciplined because she

complied with the policies as they existed during her employment.  (*Id.* ¶¶ 475–77.)  By disciplining her for violating a policy not in effect at the time of her conduct, she posits, defendants deprived her of her "property interest" in being able to rely on those policies.  But the law does not support this theory of a property interest.

While it is true that policies and procedures set forth by an institution may give rise to a property interest, *Richardson v. Town of Eastover*, 922 F.2d 1152, 1156 (4th Cir. 1991), they are not a property interest in and of themselves.  *Perry*, 408 U.S. at 600–01.  There must be a separate entitlement to which the policies and procedures create a right.  *See Perry*, 408 U.S. at 601.  A property interest may only arise from policies and procedures when there is a mutual understanding that establishes entitlement to the interest, rather than a mere unilateral expectation of the right.  *Id.* ("A person's interest in a benefit is a 'property' interest . . . if there are such rules or mutually explicit understandings that support [her] claim of entitlement to the benefit."); *see also Roth*, 408 U.S. at 577 ("[She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it.").

In *Perry*, a property interest in continued employment arose from a provision in the faculty handbook that stated, ". . . the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work."  408 U.S. at 600.  Similarly, when a statute specified a list of reasons that a business license may be revoked, the Fourth Circuit held that there was reasonable mutual assent to infer that absent any of the listed reasons, the license would not be revoked.  *Richardson*, 922 F.2d at 1158.  In *Alger*, this court found that a student had potentially alleged a legitimate property interest when there was mutual assent between the student and university (including an

admission by the defendants in litigation) that the student was entitled to be enrolled as long as his fees were paid, he remained in good academic standing, and he complied with the university's conduct rules. *Doe v. Alger*, 228 F. Supp. 3d 713, 716, 729 (W.D. Va. 2016). In contrast, this court found no property interest was alleged in continued university enrollment when defendants made no such admission and the plaintiff failed to specify in his complaint any policies or procedures stating that the university only expels or suspends students for cause. *Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 500 (W.D. Va. 2019).

As illustrated by these cases, policies and procedures were sometimes key to discovering whether an entitlement had been created. But the policies and procedures were not, themselves, the protected interest. In *Alger* and *Doe*, the disputed interest was continued enrollment; in *Perry*, it was continued employment; in *Richardson*, it was the business license. *Alger*, 228 F. Supp. 3d at 729; *Doe*, 400 F. Supp. 3d at 500; *Perry*, 408 U.S. at 601; *Richardson*, 922 F.2d at 1156. Yet Reid argues a reliance upon the policies and procedures themselves as a protected property interest. (Compl. ¶¶ 473–76.) None of these cases provide a basis to conclude that Reid had any property interest solely in her reliance on the policies and procedures set forth by JMU. Furthermore, in concluding that a student had a clearly established right to due process arising from an alleged property interest in a university's "policies and procedures," the Fourth Circuit recently reaffirmed that mere "[v]iolations of . . . school procedures are insufficient by themselves to implicate the interests that trigger a federal due process claims." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 239–40 (4th Cir. 2021) (citing *Kowalski v. Berkeley Cnty. Schs.*, 652 F.3d 565, 576 (4th Cir. 2011)).

There is likewise no support for Reid's claim that she holds a property interest in her reliance upon fair enforcement of their disciplinary policies. As noted above, while policies and

procedures may create an entitlement, that entitlement must be separate from the policies and procedures themselves. *Perry*, 408 U.S. at 600–01. The same goes for disciplinary procedures. *See Garraghty v. Commonwealth of Virginia*, 52 F.3d 1274, 1284 (4th Cir. 1995). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). That substantive interest cannot be the procedures alone. *See id.*; *see also Garraghty*, F.3d at 1284.

The *Garraghty* court found a statutorily-created property interest in the plaintiff's continued employment, but it rejected his argument that he held a property interest "derived from the state grievance procedure." *Garraghty*, F.3d at 1277. The Fourth Circuit clarified that "entitlement to the process—the 'method'—by which [employment decisions are made] is not a constitutionally protected property interest." *Id.* at 1284 (quoting *Swartz v. Scruton*, 964 F.2d 607, 610 (7th Cir. 1992)).

Reid similarly alleges a property interest in appropriate application of disciplinary procedures (as interpreted by her). (Compl. ¶¶ 473–75.) However, there is no valid due process claim unless those procedures create a separate, substantive property interest (such as continued employment, which Reid has not adequately alleged as discussed above). For all of these reasons, the court concludes that Reid has failed to adequately allege a property interest in "being able to rely upon JMU's policies and procedures" or fair application of disciplinary proceedings. (*Id.* ¶ 473.)

## 2. Reid fails to allege a liberty interest.

Reid next argues that defendants have infringed on her protected liberty interest in her good name and reputation, and that her resulting resignation amounted to a constructive

discharge.  (Compl. ¶ 535.)  A person has a liberty interest where their "good name, reputation, honor, or integrity is at stake." *Roth*, 408 U.S. at 573.  And employees have a protected interest in the contents of their personnel files not containing false, damaging information. *Ledford v. Delancey*, 612 F.2d 883, 887 (4th Cir. 1980).  The Fourth Circuit has determined that to state a claim for deprivation of a liberty interest in one's reputation or choice of occupation, "a plaintiff must allege that the charges against [her]: (1) placed a stigma on [her] reputation; (2) were made public by the employer; (3) were made in conjunction with [her] termination or demotion; and (4) were false." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007); *see also Stone*, 855 F.2d at 172 n.5.[8]

Reid alleges ample facts to support her assertion that the allegations of sexual misconduct were false, were made public, and imposed stigma preventing her from engaging in other employment, satisfying the first, second, and fourth elements of the liberty interest claim. Accusation of sexual misconduct against students in a university employment setting has previously been found sufficiently stigmatizing, satisfying the first element. *See Pappas v. James Madison Univ.*, No. 5:22-cv-00028, 2023 WL 2768425, at *15 (W.D. Va. Mar. 31, 2023); (*see also* Compl. 2 (". . . anyone who is found to have committed or engaged in sexual harassment, sexual discrimination or sexual misconduct under Title IX becomes almost a pariah in our society. . .").)

---

[8]  Reid relies, instead, upon *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012), to argue that *Sciolino*'s "in conjunction with [her] termination or demotion" element should be replaced with "distinctly altered or extinguished legal status." *Sciolino*, 480 F.3d at 646.  Plaintiff argues that using *Shirvinski*'s rule would lead to a different result due to the "altered or extinguished legal status" of her damaged reputation. *Shirvinski*, 673 F.3d at 315.  However, the preceding sentence of the *Shirvinski* opinion directly undercuts that argument.  673 F.3d at 314–15.  The Fourth Circuit explained "the Supreme Court has required plaintiffs in cases involving allegedly defamatory statements by the government to show more than reputational injury in order to prevail on a constitutional claim. '[I]njury to reputation by itself [is] not a "liberty" interest protected under the [Due Process Clause].'" *Id.* (quoting *Siegert v. Gilley*, 500 U.S. 226, 233 (1991)).

As to the second element, the charges need not actually have been made public by the employer; the mere likelihood that prospective employers or the public at large would inspect the file is enough. *Sciolino,* 480 F.3d at 650 (explaining that because job applicants are not generally aware of what information from their personnel file is shared by past employers, requiring allegation of actual disclosure to a prospective employer would undermine the protected Fourteenth Amendment liberties). Reid has alleged that this damaging information has been disclosed to prospective employers. (Compl. ¶ 545.) While Reid did not specify who disclosed the information, granting all reasonable inferences to her at the motion-to-dismiss stage, the court infers that the personnel file is *likely* to be viewed by prospective employers given that it *already has been*. *Edwards*, 178 F.3d at 244. Despite sufficiently pleading three out of four elements, Reid fails to plead constructive discharge amounting to "termination or significant demotion" for the purposes of a liberty interest claim.

As such, she cannot establish that the damaging remarks were made in conjunction with a termination or significant demotion. *Sciolino*, 480 F.3d at 646; *Pappas*, 2023 WL 2768425, at *15; *Kashdan v. George Mason Univ.*, 70 F.4th 694, 702 (4th Cir. 2023) (explaining that where the employment action at issue for a due process claim is based on reputational harm, and employer demoted employee, the demotion must be "significant" and the equivalent of being "effectively excluded from one's trade or calling as by being thrown out on the street") (citations omitted). Reid was not terminated, nor was she demoted; she resigned. The only sanction imposed by the employer was a written reprimand and withdrawn consideration for a promotion to which she was not entitled.[9] (Compl. ¶¶ 419; 364-66.) Thus, the only way that she could state

---

[9] Reid complains of this as a "punishment" before she had the opportunity to defend herself. (Compl. at 4.) The court views this as an example of lacking due process rather than an imposition on a property right to the promotion.

a liberty interest implicating the due process clause would be if her resignation amounted to a termination.  Reid argues that her resignation amounted to a constructive discharge on the basis of "stigma and severe ramifications" which caused "intolerable working conditions."  (Compl. ¶¶ 460–61.)

To show a resignation was effectively a termination is a high bar.  *Stone*, 855 F.2d at 172.  The court in *Stone* provides an instructive framework for analysis of this issue, positing that a resignation is a "deprivation" of property when it is either (1) obtained by the employer's misrepresentation or deception, or (2) forced by the employer's duress or coercion.  *Id.* at 173.  The crux of the inquiry is whether the employer's actions kept the employee from making a free choice.  *Id.*; *see also Bodkin v. Town of Strasburg*, 386 F. App'x 411, 413 (4th Cir. 2010) (citing *Stone*'s misrepresentation, duress, or coercion test).  Crucially, "that the employee may perceive [her] only option to be resignation—for example, because of concerns about [her] reputation—is irrelevant."  *Stone*, 855 F.2d at 174.

Reid fails to specify in her complaint when and how she actually left employ at JMU.  The complaint features vaguely worded allusions to her departure, without elaborating on the specific circumstances.[10]  (Compl. at 4, ¶ 460.)  Neither is there any indication that she was terminated or demoted in connection with the damaging remarks.  Indeed, the only action allegedly taken by JMU was a written reprimand in her personnel file.  (Compl. ¶ 452.)  As such, there are no allegations that JMU induced her resignation, either by misrepresentation or by

---

[10]  Such as: "[Reid] was forced to give up her dream job at JMU.  It was not possible to continue her employment with the University considering that Lese was a full-time faculty member there," (Compl. 4,) and "Defendants' wrongful adjudication against Plaintiff Reid that she was responsible for sexual misconduct carried with it a powerful stigma and severe ramifications making it impossible for her to continue her employment with JMU."  (Compl. ¶ 460.)

duress or by coercion.  Therefore, Reid has failed to allege the third element of the claim based on her reputational liberty interest.

Because Reid has not alleged a protected property or liberty interest, either in continued employment or in her reputation, her § 1983 and Virginia Constitution due process claims must be dismissed.  Especially in light of Reid's voluntary resignation and other factors discussed above, the court finds that there is not additional factual matter that Redi could add to make her due process claims viable.  Thus, these claims will be dismissed with prejudice.[11]

## C.  Title IX Claim

Title IX provides that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).  It appears that Reid is asserting what is called an "erroneous outcome" claim, arguing that defects in the disciplinary process are motivated by gender bias.  *E.g.*, *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 764 (D. Md. 2015).

As the *Salisbury* court explained, courts analyzing "erroneous outcome" claims typically apply the framework set out in *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).  *See, e.g.*, *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 132 F.3d 949, 961–62 (4th Cir. 1997) (citing favorably to *Yusuf*), *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638–41 (6th Cir. 2003) (same); *Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996, at *9–10 (W.D. Va. Aug. 5, 2015) (same).  The plaintiff must adequately plead that she was innocent and, on the basis of gender bias, wrongly found responsible for an offense.  *Yusuf*, 35 F.3d at 715.  *Yusuf* sets out

---

[11] Defendants also argue that they are entitled to qualified immunity, and that the Virginia Constitution does not allow a damages claim for due process violations, a position that Reid strongly opposes.  In light of its ruling that Reid has failed to plead a constitutional violation, the court does not reach either of these issues.

three elements that must be alleged for this type of claim: (1) "a procedurally or otherwise flawed proceeding"; (2) "that has led to an adverse and erroneous outcome"; and (3) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.*  However, as the Fourth Circuit has clarified, a Title IX discrimination claim also can be stated outside of *Yusuf's* "erroneous outcome" or "selective enforcement" frameworks. *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 236 (4th Cir. 2021).  The court reasoned that the plain language "of Title IX prohibits all discrimination on the basis of sex," while emphasizing that Title IX requires plaintiffs to adequately plead but-for causation "between the student's sex and the university's challenged disciplinary proceeding." *Id.*

      For purposes of this opinion, the court assumes without deciding that Reid has adequately alleged both a flawed disciplinary proceeding and an erroneous outcome, meeting the first two factors of the *Yusuf* test.  *Yusuf*, 35 F.3d at 715.  Nonetheless, the court concludes that the complaint does not plausibly allege the third—that discrimination was the cause of any erroneous outcome.  Whether under *Yusuf* or *Sheppard*, for Reid's Title IX claim to survive a motion to dismiss, she must allege some facts to support the inference that the erroneous outcome was caused by bias.[12]  *Id.*; *Sheppard*, 993 F.3d at 236.  Conclusory allegations of gender discrimination are not sufficient to support but-for causation.  *Salisbury*, 123 F. Supp. 3d at 766. Examples of sufficiently particular allegations may include, among others, "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of

---

[12] Reid also claims that she was discriminated against on the basis of her sexual orientation.  For purposes of this opinion, the court refers to both types of discrimination simply as gender discrimination or sex discrimination.  *Cf. Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616–17 (4th Cir. 2020) (holding that Title IX prohibits discrimination based on a person being transgender); *B.P.J. ex rel. Jackson. v. W. Va. State Bd. of Educ.*, 98 F.4th 542, 563 (4th Cir. 2024) (same).  *See also Bostock v. Clayton Cnty.*, 590 U.S. 644, 660 (2020) ("It is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.").

decision-making that also tend to show the influence of gender." *Id.* (quoting *Yusuf*, 35 F.3d at 715).

Cases in which a plaintiff has survived a motion to dismiss generally involve specific facts reflecting clear bias.  For example, the court concluded that plaintiff met his pleading burden where he alleged that an adjudicator demonstrated gender bias in a later Title IX hearing by expressing the "discriminatory view that males will always enjoy sexual contact even when that contact is not consensual." *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 586 (E.D. Va. 2018).  By contrast, this court held that the plaintiff's assertion was merely conclusory and insufficient when he argued that the school rarely reversed appeals by men "even when the evidence in favor of the male student [was] clear." *Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 503 (W.D. Va. 2019).  Additionally, where particular defendants had no role in deciding the student's responsibility or appeal during a Title IX investigation, the court held that any alleged discriminatory statements by those individuals were irrelevant in causing the erroneous outcome.  *Id.*  The *Salisbury* court considered it a "close call," but found causation was not adequately pled where a student provided numerous public newsletters issued by his university regarding sexual assault on college campuses.  123 F. Supp. 3d at 766.  The court reasoned that the provided notices were almost all gender neutral, even one funded by a grant from a "Foundation for Women."  Another publication, which noted that "[m]en commit the great majority of all sexually violent crimes" while also recognizing that "a staggering 10–20% of males are sexually violated at some point in their lives," was found not sufficiently gendered to support discriminatory but-for causation.  *Id.* at 767.

Reid's complaint repeatedly asserts alleged procedural irregularities, (Compl. ¶¶ 628, 631–632, 636–37, 638–640, 642, 646, 647(a–w), 648(a–j)), and she asserts an erroneous

outcome.  (Compl. ¶¶ 629–30).  But she pairs those assertions with only conclusory statements that such irregularities were the result of bias due to her sexual orientation and gender.  (Compl. ¶¶ 343, 629, 641, 643–45, 649–50.)  Much like *Doe*, where the plaintiff did not allege any particular biased actions or statements on the part of any hearing panel member, Reid has failed to allege any discriminatory actions or statements by her own hearing panel, or indeed anyone involved in her Title IX investigation.  400 F. Supp. 3d at 503.

Because Defendant Sirocky-Meck served as the Title IX investigator who prepared the report given to the panel, (Compl. ¶ 313; Policy #1340 § 6.4.2.a.), any bias by Sirocky-Meck could have influenced the hearing panel's decision.[13]  However, Reid has made no allegation of discriminatory statements or action by Sirocky-Meck.  The only possible statement linking bias to the flawed proceedings is that Sirocky-Meck did not comply with Reid's request for a member of the LGBTQ community to be appointed to the hearing panel.  (Compl. ¶¶ 356, 647(w).)  Reid states that she could challenge panel members for good cause.  (Compl. ¶¶ 354–56; Policy § 6.6.8.2.)  However, the complaint fails to indicate that Reid "challenged" any particular member, or indeed that she would have had "good cause" grounds to do so, only that she requested an individual from the LGBTQ community be appointed to the panel and that Sirocky-Meck did not comply.  (Compl. ¶¶ 355, 654–56.)  Reid had no entitlement to choose who sat on her hearing panel, and there are no further allegations that suggest Sirocky-Meck was motivated by bias when she declined to accommodate Reid's request.

This assertion, alone, does not support the leap in logic necessary to conclude that the panel's decision was motivated by gender discrimination.  The complaint features no allegations of any statement or action by any of the three panel members (or defendants Aguirre and

---

[13]  The court grants all reasonable inferences towards the plaintiff at this stage.  *Edwards*, 178 F.3d at 244.

Coltman who decided the appeals) to suggest that their findings were biased, and indeed the panel members are not named as defendants in this complaint.  Plaintiff's briefing on the issue avers, without citing any case law to support the assertion, that the flawed proceeding ". . . was absurd on its face, and demonstrates a level of animosity that in and of itself represents discrimination."  (Pl.'s Br. in Opp'n 67, Dkt.)  Absent any allegation of specific statements or actions by any defendant, the court assumes that Reid is alleging that a more global culture of anti-LGBTQ and anti-female bias caused the erroneous outcome.  However, there is no specific factual support for that theory in this case, even less than in *Salisbury* where numerous public statements provided were still not enough to support the claim.  *Salisbury*, 123 F. Supp. 3d at 767.

Because Reid has failed to plead factual allegations to support her assertion of bias on the part of any person involved with her Title IX investigation, finding of responsibility, or appeal decisions, her Title IX claim must be dismissed.  The court recognizes that she may be able to state such a claim with additional factual matter, so it will dismiss this claim without prejudice.

**D.  Claims Against Unnamed Defendants**

Reid names five "John and Jane Doe" defendants on this case, (Compl. 1), but nowhere does she explain who these individuals are or what they allegedly did to violate her rights.  In fact, the singular mention of the unnamed defendants in all of the plaintiff's court filings (including the complaint and all briefing) states, "Defendants appear to argue that the Eleventh Amendment bars all claims under Section 1983 against Alger, Coltman, Aguirre, Sirocky-Meck, and the Doe defendants."  (Pl.'s Br. in Opp'n 43.)  Reid has, therefore, failed to allege any claim against these unnamed defendants.  Moreover, there is no evidence that she has attempted to identify them or to serve any of these Doe defendants, which constitutes a separate ground for

dismissal.  Fed. R. Civ. P. 4(m).  Further, many—if not all—of the reasons for dismissal under Rule 12(b)(6), such as Reid's failure to identify a property or liberty interest, would apply with equal force to the Doe defendants.  For all these reasons, the court will dismiss the Doe defendants without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the court will grant the University Defendants' motion to dismiss on all counts.  The court will dismiss with prejudice as barred by Eleventh Amendment immunity: (1) all due process claims against JMU, under both § 1983 and the Virginia Constitution; and (2) claims for money damages against the other defendants in their official capacities as to Counts I–III.  The court will dismiss with prejudice all due process claims against individual defendants in both official and individual capacities for failure to allege a protected property or liberty interest.  The court will dismiss without prejudice Reid's Title IX claims for failure to allege the causation element.  And finally, the court will dismiss without prejudice all claims against the five Doe defendants.

The court will enter an appropriate order.

Entered: August 5, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge